UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE WAGLE,

        Plaintiff,                      CIVIL ACTION NO. 10-CV-10506

  vs.                                   DISTRICT JUDGE NANCY G. EDMUNDS

B. SKUTT, et al.,                MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendants.
_____/

### REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:** This Court recommends that the Motion For Summary Judgment filed by Defendants Pramstaller and Zeller (docket no. 96) be **GRANTED**, and the Motion For Summary Judgment filed by Defendants Prison Health Services, Inc. and Zakiuddin Khan (docket no. 100) be **GRANTED IN PART AND DENIED IN PART**.

**II.**    **REPORT**:

This is a *pro se* civil rights action filed by a Michigan State prisoner pursuant to 42 U.S.C. §§ 1983 and 1985. Presently before the Court is the Motion For Summary Judgment filed by Defendants Pramstaller and Zeller (docket no. 96), and the Motion for Summary Judgment filed by Defendants Prison Health Services, Inc. ("PHS") and Dr. Zakiuddin Khan (docket no. 100). The motions are fully briefed. (Docket nos. 98, 105, 106). All pretrial matters have been referred to the undersigned for action. (Docket no. 7). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). The motions are now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

**A.**    **Facts**

The facts of this case are more fully set forth in the Court's earlier Reports and

1

Recommendations. (Docket nos. 48-50, 107, 108). Defendants Pramstaller and Zeller are identified in the complaint as John Doe #4 and Jane Doe #2, respectively. (Docket nos. 1, 46). The complaint states that John Doe #4 (hereinafter "Defendant Pramstaller") and Jane Doe #2 (hereinafter "Defendant Zeller") make the determinations if medical care or equipment will be provided to inmates. (Docket no. 1, ¶¶ 19, 23). Defendant Khan is identified in the complaint as an employee of PHS (docket no. 1, ¶ 10), which Plaintiff claims is the medical insurance provider for the Michigan Department of Corrections ("MDOC") (docket no. 1, ¶ 21).

Plaintiff brought this lawsuit in February 2010. (Docket no. 1). Defendants Pramstaller and Zeller have not filed an answer to the complaint, which was due August 1, 2011, or a motion under Federal Rule of Civil Procedure 12. (Docket entry dated June 13, 2011; Docket no. 89). Instead, on the date their answer was due Defendants Pramstaller and Zeller filed the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 96). Defendants PHS and Kahn filed answers to the complaint and likewise move for summary judgment under Rule 56. (Docket nos. 67, 87, 100).

**B.     Standard**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* In determining whether there are issues of fact for trial, the inferences drawn from the underlying facts must be

viewed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.     Analysis**

*1.     Stay of Discovery*

Defendants Pramstaller and Zeller move for summary judgment on three bases: first, they argue that Plaintiff has not alleged or demonstrated that they were personally involved in unlawful conduct; second, they argue that they are entitled to qualified immunity on Plaintiff's § 1983 claim; and third, they argue that Plaintiff failed to exhaust his administrative remedies. (Docket no. 96). On August 10, 2011, Defendants Pramstaller and Zeller moved for a stay of discovery until after the issue of qualified immunity is resolved. (Docket no. 97). The Court granted Defendants' motion to stay discovery on September 2, 2011. (Docket no. 104). Plaintiff now argues that without discovery he cannot afford copies of his medical file, which places him at an unfair disadvantage in responding to Defendants Pramstaller and Zeller's motion for summary judgment. (Docket no. 98).

Rule 56(d) of the Federal Rules of Civil Procedure states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d). A district court may not dismiss a motion for summary judgment based on qualified immunity solely because discovery was not complete. *Skousen v.*

3

*Brighton High Sch.*, 305 F.3d 520, 526-27 (6th Cir.2002). Instead, the court must inquire "into whether any facts material to Plaintiff's claims are genuinely at issue, and only upon a finding that material facts are in fact in dispute is a court at liberty to hold a motion for summary judgment in abeyance pending additional discovery." *Summer v. Leis*, 368 F.3d 881, 886 (6th Cir.2004) (citing *Skousen*, 305 F.3d at 527).

Plaintiff did not submit a declaration or affidavit under Rule 56(d) explaining his need for additional discovery. Furthermore, Plaintiff's contention that he cannot afford copies of his medical record without discovery is unavailing, since there is no constitutional or statutory requirement that Defendants pay Plaintiff's discovery costs. *Smith v. Yarrow*, 78 Fed. Appx. 529, 544 (6th Cir.2003).

The Court finds no basis for delaying consideration of Defendants Pramstaller and Zeller's motion for summary judgment.

*2.    Failure to Exhaust*

Defendants Pramstaller and Zeller argue that Plaintiff failed to exhaust his internal remedies before filing suit. Under 42 U.S.C. § 1997e(a), an inmate must exhaust all available administrative remedies prior to filing an action under § 1983, or any other federal law, to challenge the conditions of his confinement. Proper exhaustion is mandatory and requires a prisoner to comply with state and other critical procedural rules. *Woodford v. Ngo* 548 U.S. 81, 90-91 (2006). MDOC policy directive 03.02.130(R), effective July 9, 2007, provides that a grievance must include dates, times, places, and names of all those involved in the issue being grieved. (Docket no. 96, ex. 3).

Plaintiff attached copies of the relevant grievance forms and responses to his complaint. (Docket no. 1, exs. C, J). The documents show that Grievance no. TCF-08-11-00646-12I, in which Plaintiff complains about the denial of his request for prescription tennis shoes, was filed against the

MDOC, Thumb Correctional Facility ("TCF") Health Care, CMS, prison employees Skutt and Mass, "and any other part[ies] that may surface at a later date that are in violation of the Eighth Amendment." (Docket no. 1, ex. C). Grievance no. TCF-09-06-00433-12D, which pertains to the 2009 low blood sugar episode, was filed against the MDOC, PHS, TCF Health Care, Defendant Khan and "other individuals that may surface in the future, that are in violation of the Eighth Amendment." (Docket no. 1, ex. J). In an earlier Report and Recommendation in this case, this Court found that Defendant Hutchinson, a medical doctor named as a Defendant in this case, failed to sustain his burden of showing that Plaintiff did not exhaust available administrative remedies because the relevant grievances named the MDOC, TCF Health Care, CMS, and PHS, and were not rejected for failure to identify the specific persons about whom Plaintiff was complaining. (Docket no. 107). For the same reasons stated in that Report and Recommendation, the Court should find that Defendants Pramstaller and Zeller have not sustained their burden of showing that Plaintiff did not exhaust his claims against them. *See Grear v. Gelabert*, No. 07-203, 2008 WL 474098, at *2, *7-8 (W.D. Mich. Feb. 15, 2008); *McAdory v. Engelsgjerd*, No. 07-13192, 2010 WL 1131484, at *3 (E.D. Mich. Feb. 11, 2010) (a grievance that identifies "health care," "CMS," or "PHS" exhausts claims against unnamed health care staff, particularly where the grievance is decided on the merits and is not rejected by the MDOC as unduly vague).

*3.     Qualified Immunity*

Next, Defendants Pramstaller and Zeller contend that they are entitled to qualified immunity in their individual capacities. Government officials performing discretionary acts enjoy qualified immunity from suit under § 1983 for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

5

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). A two-step analysis guides the Court in its determination. First, the Court must determine whether the plaintiff's factual allegations show that the defendants violated a constitutional right. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (citation omitted). Second, the Court must determine whether the right at issue was clearly established at the time of the defendants' alleged misconduct. *Id.*

To establish liability under 42 U.S.C. § 1983, Plaintiff must allege that a right secured by the constitution or a federal law was violated by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). The complaint states that Defendants were deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment. To establish an Eighth Amendment violation, Plaintiff must show that he suffered from a serious medical condition, and that the official being sued recklessly disregarded a known substantial risk to the Plaintiff's health and safety. *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir.2001). A defendant cannot be held liable under § 1983 absent a showing that he directly participated in, or otherwise authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989).

Defendant Pramstaller shows by affidavit that he was the MDOC's Chief Medical Officer from February 2002 to March 2008, when he retired from service. (Docket no. 96, ex. 1). The affidavit states that Defendant Pramstaller did not provide direct patient care to Plaintiff and had no knowledge of Plaintiff's medical treatment. (Docket no. 96, ex. 1). The affidavit further states that Plaintiff's allegations occurred after Defendant Pramstaller retired from service. (Docket no. 96, ex. 1). Plaintiff's medical record does not mention Defendant Pramstaller or show that Defendant Pramstaller was in any way involved in Plaintiff's medical care. (Docket no. 102). Plaintiff has not

provided any evidence to show otherwise.

As for Defendant Zeller, she shows that for all times relevant to this lawsuit she was the MDOC's Administrator of the Bureau of Health Services in Lansing, Michigan. (Docket no. 96, ex. 2). Defendant Zeller states by affidavit that she had no knowledge of Plaintiff's medical needs or of his medical care and treatment. (Docket no. 96, ex. 2). Once again, Plaintiff's medical record does not mention Defendant Zeller or show that she was in any way involved in Plaintiff's medical care. (Docket no. 102). Plaintiff has not provided evidence to the Court to demonstrate Defendant Zeller's personal involvement.

The complaint does not allege sufficient facts and Plaintiff has not produced evidence to show specific incidents of constitutional wrongdoing of Defendants Pramstaller and Zeller. Where there is no constitutional violation, the plaintiff's individual capacity "§ 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity." *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir.2007).

As for Plaintiff's Eighth Amendment official capacity claims against these Defendants, where no constitutional violation by the individual Defendants is established, the municipal defendant cannot be held liable under § 1983. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir.2001); *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir.2000). Accordingly, the Court should dismiss Plaintiff's individual and official capacity Eighth Amendment claims against Defendants Pramstaller and Zeller.

4.  *Eighth Amendment Individual Capacity Claims Against Defendant Kahn*

   a.  *Shoe Accommodation and Corn*

Plaintiff first alleges that on June 5, 2009 Defendant Dr. Zakuiddin Khan improperly treated

7

a corn on Plaintiff's foot by prescribing mediplast, a medicated corn pad remover. (Docket no. 1, ¶¶ 36-38, 43, 47). He also alleges that Defendant Khan was deliberately indifferent to his complaints of ill-fitting shoes. (Docket no. 1, ¶ 36).

Defendant Khan submitted an affidavit and copies of Plaintiff's medical record in support of his motion. The medical record shows that Defendant Khan saw Plaintiff on May 28, 2009 for a callous on his right 5th toe. (Docket no. 102 at PHS-00019). Defendant Khan trimmed the callous and applied mediplast. There is no notation in the medical record that Plaintiff discussed ill-fitting shoes with Defendant Khan during this visit. On June 15, 2009 Physician's Assistant Paula Mass requested that Plaintiff receive special accommodation shoes. (Docket no. 102 at PHS-00023). Nonparty Jeannine Qualman ordered shoes for Plaintiff on June 24, 2009. (Docket no. 102 at PHS-00028).

On June 12, 2009 Plaintiff was seen by healthcare to recheck the corn between his toes. The subjective assessment states that Plaintiff was using mediplast and that his toe area was improving. (Docket no. 102 at PHS-00021). Plaintiff was seen in the Endocrine Chronic Care Clinic on July 9, 2009, at which time it was noted that Plaintiff had no ulcers or infection of his feet, but that he had a small corn on his right 5th digit that was improving with mediplast. (Docket no. 102 at PHS-00036).

On August 22, 2009 Plaintiff submitted a kite with complaints that he had a corn on his foot and that corn pads were not working. (Docket no. 102 at PHS-00044). Several days later Plaintiff was seen in healthcare, where it was noted that there was no visible corn on Plaintiff's foot. (Docket no. 102 at PHS-00046). During Plaintiff's October 2, 2009 Endocrine Chronic Care Clinic he was observed to have no foot ulcers, but was noted to have a callous of his left foot base of the toe with

no ulceration or wart. (Docket no. 102 at PHS-00059). Plaintiff was issued corn pads for the corn on his right foot and was instructed to watch his left foot and kite as needed. (Docket no. 102 at PHS-00060). According to Dr. Khan's affidavit, it was medically appropriate for him to prescribe mediplast because Plaintiff did not suffer from neuropathy or poor circulation. (Docket no. 102, ex. 1).

The evidence in this case demonstrates that the condition of Plaintiff's feet, whether from a corn and callus or from ill-fitting shoes, does not present a sufficiently serious medical need for purposes of his Eighth Amendment claim. Consequently, Plaintiff cannot satisfy the objective component of his Eighth Amendment claim relating to the corn and shoe accommodation. Further, Plaintiff cannot satisfy the subjective component of the deliberate indifference test because he has not demonstrated that Defendant Khan knowingly disregarded a serious or substantial risk of harm to Plaintiff related to ill-fitting shoes, the corn, or the callus. Based on the record before the Court, no reasonable jury could find in favor of Plaintiff on his Eighth Amendment claim against Defendant Khan related to his shoe accommodation or corn. The Court should dismiss these allegations.

   *b.*  *Low Blood Sugar Incident*

Next, Plaintiff argues that Defendant Khan did not provide Plaintiff treatment when his blood sugar dropped to 55 mg/dl. Plaintiff claims that he informed his unit officer on June 26, 2009 at approximately 11:40 a.m. that he was having an insulin reaction and that his blood sugar was 55 mg/dl. He claims that he showed his unit officer his glucometer and informed him that he had nothing to eat or drink in his cell. (Docket no. 1, ¶ 53). Plaintiff alleges that the officer immediately called healthcare to inform them of the situation and spoke with Defendant Khan. He contends that Defendant Khan informed the officer that Plaintiff could wait forty-five minutes before going to

chow and did nothing to help treat Plaintiff's low blood sugar. Plaintiff claims that he was forced to suffer the symptoms of insulin shock, and that he became incoherent to the point that he did not know where he was and can not remember walking to the chow hall. (Docket no. 1, ¶ 53). Defendant Khan states in his affidavit that he does not recall this incident, but that in his professional judgment it is not inappropriate to expect a diabetic prisoner who is taking insulin and who has a blood sugar level of 55 mg/dl to wait forty-five minutes to eat when he is asymptomatic. (Docket no. 102, ex. 1).

There is no documentation in Plaintiff's medical record that shows the reported conversation between the unit manager and Defendant Khan on June 26, 2009. (Docket no. 102). However, there is evidence that this conversation occurred. The MDOC conducted an investigation in response to Plaintiff's Grievance no. TCF-09-06-0433-12D. The step 1 response to Grievance no. TCF-09-06-0433-12D reveals that on June 26, 2009 at 11:44 a.m. a unit officer recorded in a prison log book in Burris B unit that "I tx'd H/C for Wagle 232438 who stated that his blood sugar was 55. Dr. Kahn stated he would be ok for 45 minutes until he eats." (Docket no. 1, ex. J).

In the present motion Defendant Kahn maintains that his decision to recommend that Plaintiff wait forty-five minutes before eating was based on his medical judgment and cannot be challenged under § 1983. He also argues that Plaintiff has not established that he suffered any detrimental effect by the delay in eating.

It is a well established principle that differences in judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or course of medical treatment are not enough to state a deliberate indifference claim. *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976)). Further, there

10

is no doubt that where a prisoner's deliberate indifference claim is based on a delay in medical treatment for a non-obvious or minor malady, medical proof is necessary to assess whether the delay caused a detrimental effect to the prisoner. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir.2004). In contrast, however, when a prisoner's claim involves an injury or illness that is so obvious that a layperson would recognize the need for treatment, the plaintiff is not required to present verifying medical evidence to show that he suffered a detrimental effect from the delay. *Id*. Instead, where a serious or non-minor malady is concerned, it is sufficient for the prisoner to show that he actually experienced the need for medical treatment and the need was not addressed within a reasonable period of time. *Id*. at 900. Under certain circumstances, the evidence will show that the medical attention rendered was so woefully inadequate as to amount to no treatment at all. *Westlake v. Lucas*, 537 F.2d at 860 n.5.

The Court suggests, after viewing the claims and evidence in the light most favorable to Plaintiff, that Plaintiff's medical situation was not minor. Plaintiff was confined to a cell, with a blood sugar level of 55 mg/dl, with active injected insulin in his system, and with no access to food or other glucose product to counteract the insulin. His request for help, which was conveyed by the unit officer to Defendant Khan, effectively went unanswered. Instead, the evidence suggests that Plaintiff was forced to wait with no treatment for forty-five minutes, then walk himself down to chow hall in an effort to find food that could correct his low blood sugar. The fact that Plaintiff did not pass out, convulse, or suffer other more serious complications from this incident should not absolve Defendant Khan from having to respond to Plaintiff's allegations.

It is this Court's opinion that a genuine issue of material fact remains as to whether Defendant Khan's failure to provide treatment to correct Plaintiff's low blood sugar on June 26,

2009 amounted to deliberate indifference.

*5.     Eighth Amendment Official Capacity Claim Against Defendant Khan and Claim Against PHS*

In addition to his Eighth Amendment individual capacity claim, Plaintiff sues Defendant Khan in his official capacity as an employee of PHS. Plaintiff also avers that Defendant PHS directed its employees to refuse to provide Plaintiff with properly fitted prescription shoes, and set upon a pattern of deliberate indifference to his diabetes care. (Docket no. 1, ¶¶ 48, 61). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir.2003) (citations omitted). To establish § 1983 liability against Defendant Khan in his official capacity or against Defendant PHS, Plaintiff must show that PHS implemented a policy, custom, or practice that caused a deprivation of the Plaintiff's rights. *Starcher v. Corr. Med. Sys., Inc.*, 7 Fed.Appx. 459, 465 (6th Cir.2001); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 363-64 (6th Cir.1993) (a plaintiff must identify the policy, connect the policy to the defendant and show that the particular injury was caused because of the execution of that policy).

Plaintiff has not identified a formal policy at issue in this case. Therefore, it is incumbent upon Plaintiff to demonstrate that PHS tolerated a custom or practice of unconstitutional conduct. "A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.' " *Doe v. Claiborne Cnty., Tenn.,* 103 F.3d 495, 507 (6th Cir.1996) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

The evidence in this case does not establish that PHS maintained a custom or practice of providing inadequate diabetic treatment or of denying prescription or specialty fitted shoes. Instead, Plaintiff was provided with regular medical care and treatment, with education on his diabetes care,

with encouragement to maintain a source of glucose in his cell, and with instruction to contact healthcare if he experienced low blood sugar readings. (Docket no. 102). Further, after the June 26, 2009 incident in which Defendant Khan allegedly failed to provide medical treatment for Plaintiff's low blood sugar, Defendant Khan was instructed to notify a registered nurse on duty when an officer reports a prisoner with a low blood sugar. (Docket no. 1, ex. J). Additionally, the record shows that Plaintiff was provided with special accommodation shoes. (Docket no. 102, PHS-00028).

The Court should find that there are no genuine triable issues of fact concerning Plaintiff's official capacity claim against Defendant Khan or his allegations of deliberate indifference against PHS. These claims should be dismissed.

*6.     Conspiracy Claims*

Plaintiff raises claims of conspiracy against Defendants Pramstaller, Zeller, Khan, and PHS under 42 U.S.C. §§ 1983 and 1985, alleging that they conspired to deny Plaintiff proper fitting shoes and conspired to provide diabetics with the least amount of care possible. (Docket no. 1, ¶¶ 50, 65). The Court dismissed Plaintiff's conspiracy claims against PHS in January 2011. (Docket nos. 48, 64). In the present motions Plaintiff has not alleged facts or provided evidence that Defendants Pramstaller, Zeller, or Khan operated under a racial or discriminatory animus, or alleged sufficient facts or provided evidence to support his claims of a § 1983 conspiracy against these Defendants. Accordingly, Plaintiff's §§ 1983 and 1985 conspiracy claims against Defendants Pramstaller, Zeller, and Khan should be dismissed.

*7.     Retaliation*

Finally, Plaintiff alleges that Defendant Khan's actions toward Plaintiff were motivated by

13

a retaliatory animus. (Docket on. 1, ¶ 60). Since the record does not demonstrate that Defendant Khan was aware that Plaintiff filed a grievance, the retaliation claim should be dismissed.

**D.     Conclusion**

For the reasons stated above, Plaintiff's claims against Defendants Pramstaller, Zeller, and PHS should be dismissed in their entirety and these Defendants be terminated from this lawsuit. Plaintiff's claims against Defendant Khan should also be dismissed, except for his individual capacity Eighth Amendment claim related to Defendant Khan's treatment of Plaintiff's June 26, 2009 low blood sugar episode.

**III.     NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response

proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 7, 2011          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Eddie Burt Wagle and Counsel of Record on this date.

Dated: November 7, 2011          s/ Lisa C. Bartlett
                                 Case Manager