UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE WAGLE,

     Plaintiff(s),

v.

CORRECTIONAL MEDICAL SERVICES,
INC. and ZAKIUDDIN KHAN, M.D.,,

     Defendant(s).
                                         /

Case No. 10-10506

Honorable Nancy G. Edmunds

**OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S MAY 12, 2012
REPORT AND RECOMMENDATION [159] AND GRANTING DEFENDANT KHAN'S
MOTION FOR SUMMARY JUDGMENT [145]**

This matter comes before the Court on the Magistrate Judge's May 12, 2012 Report and Recommendation [159]. Being fully advised in the premises and having reviewed the record and the pleadings, including Defendant Dr. Khan's objections, REJECTS the Magistrate Judge's Report and Recommendation ("R&R"), and GRANTS Defendant Khan's motion for summary judgment [145].

**I.   Analysis**

The R&R recommends that Defendant Khan's second motion for summary judgment be denied because (1) procedurally, it was filed without first obtaining leave from the court in violation of LR 7.1(b)(2); and (2) substantively, it fails to resolve the factual issues remaining for trial. Defendant Khan filed timely objections arguing that (1) procedurally, he filed his second motion for summary judgment based upon his understanding of the Magistrate Judge's November 30, 2011 scheduling order that provided a dispositive motion

cutoff of March 30, 2012 [Dkt. No. 119] and the grant of further discovery, including Plaintiff's deposition [Dkt. No. 132]; and (2) substantively, the second motion for summary judgment relies on Plaintiff's deposition testimony and argues that, based on that testimony, Plaintiff cannot establish that Defendant Khan was deliberately indifferent to Plaintiff's serious medical needs on June 26, 2009. This Court finds Defendant Khan's objections are well taken.

First, because additional discovery was permitted, including Plaintiff's deposition, and a new cutoff date for dispositive motions was set, this Court finds that it was reasonable for Defendant Khan to construe these actions as constituting leave to file a second motion for summary judgment that raised new legal arguments in light of Plaintiff's recent deposition testimony.

Second, the R&R failed to fully consider the effect of Plaintiff's deposition testimony on his claim, brought pursuant to 42 U.S.C. § 1983, that Defendant Khan violated his Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious medical needs. Construing the evidence in the light most favorable to Plaintiff, he cannot establish that Defendant Khan was both aware of facts from which the inference could be drawn that a substantial risk of harm to Plaintiff existed if he waited 45 minutes to 1 hour before eating lunch, and that Defendant Khan also drew that inference. Accordingly, Defendant Khan's motion for summary judgment [145] is granted.

Each day, Plaintiff went to the prison medical clinic and was administered insulin to treat his Type II diabetes between 6:15 a.m. and 6:30 a.m. and between 4:30 a.m. and 5:00 p.m. (Def.'s Mot., Ex. A, Pl.'s 1/14/12 Dep. at 17, 55.) Plaintiff also has a glucometer available to him in his cell. (*Id.* at 17, 33.) Plaintiff has never been hospitalized as a result

of a low blood sugar level. Typically, when his blood sugar level is low, he just "goes to chow" and that usually corrects it. (*Id.* at 21, 31-32.)

On June 26, 2009, Plaintiff's blood sugar level was 124 at 6:30 a.m. (*Id.* at 25.) Then, at about 11:44 a.m., Plaintiff reported to the unit officer that his blood sugar level was 55 mg/dl and asked him to contact the prison medical clinic (referred to as "Healthcare"). (*Id.* at 22.) Plaintiff started getting shaky and felt what he described as an adrenalin rush to his heart, so he checked his glucometer. (*Id.* at 23, 37.) Plaintiff showed the glucometer with the 55 reading to the unit officer who then called Healthcare. (*Id.* at 23, 57.) Plaintiff did not personally talk to anyone at Healthcare, but was present and overheard the unit officer's conversation. (*Id.* at 23.) Plaintiff testified that he believed the other person on the phone – Dr. Khan – told the unit officer to send him to eat, but the officer explained to Dr. Khan that he couldn't do that until after count time, which usually took between 45 minutes to an hour. (*Id.* at 23-24.)

> Q. Okay. What did the officer say occurred?
>
> A. I was standing right there when he called.
>
> Q. Well, what did you observe from listening to his end of the phone call?
>
> A. He was talking to somebody on the other end of the line, and told them that he had a diabetic there, Mr. Wagle, with blood sugar of 55, and he didn't have anything to eat or drink in his cell, what should he do.
>
> Q. And what did the officer say Healthcare told him?
>
> A. They conversed back and forth for – I don't know how long, but he told them – I believe the other person on the other line told him to send me to eat. The officer explained I couldn't because it was count time and there wasn't supposed to be any movement outside the unit.
>
> Q. How long does count time typically last?

3

> A. At that time, they were taking up to an hour – 45 minutes to an hour.
>
> Q. Okay. Do you remember how long after the officer called Healthcare on June 26, 2009 until you got to go to chow?
>
> A. No, I don't.
>
> Q. Okay. Do you know who specifically the doctor spoke to – I'm sorry, do you know specifically who the officer spoke to in Healthcare?
>
> A. He told me it was Dr. Khan.
>
> Q. But you did not speak to Dr. Khan directly?
>
> A. No.

(Pl.'s Dep. at 23-24). The unit officer recorded in the prison log book that at 11:44 a.m. on June 26, 2009, "I tx'd H/C for Wagle 232438 who stated that his blood sugar was 55. Dr. Kohn [sic] stated he would be ok for 45 minutes until he eats." (Dkt. No. 1, Compl., Ex. J, Grievance at 3.) In his affidavit, Defendant Kahn averred that:

> I understand that Mr. Wagle claims that on June 26, 2009, he suffered an episode of low blood sugar of 55, an officer contacted me concerning this level, and I recommended that Mr. Wagle go eat in forty-five minutes. I do not recall this incident . . . [h]owever, I have reviewed the grievance Mr. Wagle filed concerning this matter and it is attached as "B." While a number 55 mg/dl for blood sugar is low, this number does not mean that the patient will suffer any negative effects. When a patient is asymptomatic, the appropriate response to cure low blood sugar is to eat, and in Mr. Wagle's case he would be eating within forty-five minutes. In my professional judgment, waiting forty-five minutes would not lead to any negative results to a patient with blood sugar of 55 mg/dl, certainly not coma or death as claimed by Mr. Wagle.

(Def.'s Mot., Ex. B., Khan Aff. at ¶ 11.)

There is no evidence disputing that, at the time the unit officer spoke with Defendant Khan on June 26, 2009, Plaintiff was conscious, lucid and able to express that his blood sugar was low and that he should eat soon. He had no medical history of hospitalizations for low blood sugar episodes. That Plaintiff testified he subsequently got sweaty and

confused before he got to go to chow does not address the facts known to Dr. Khan at the time of the 11:44 a.m. communication with the unit officer. (Pl.'s Dep. at 37.) Moreover, Plaintiff testified that, after he ate, he had a headache and generally did not feel well for the rest of that day, but had no lasting health problem as a result of the June 26, 2009 low blood sugar episode.

> Q. Okay. Other than a headache and staying in your cell, did you have any other symptoms or problems afterwards on June 26?
>
> A. Well, I just felt sick, you know, just didn't feel good.
>
> Q. Okay. Were you all right the next day?
>
> A. As far as I recall.
>
> Q. Okay. Do you know if you had any long-term problems as a result of the June 26th low blood sugar incident?
>
> A. Not that I know of.
>
> Q. Okay. Do you think right now you're suffering any problems that may have resulted because of the June 26th, 2009 incident?
>
> A. I don't know.
>
> Q. Okay. Do you recall how soon after June 26, 2009 you went back to Healthcare?
>
> A. Well, if the incident happened during count, it would have been between 4:30 and 5:00 later on that day.
>
> Q. Okay. Do you recall if you reported the lunchtime incident to Healtcare when you went on the evening of June 26th?
>
> A. I can't recall if I did or not. There wouldn't have been nobody to tell except the nurse.
>
> Q. But if you were still having problems, you could have spoken to the nurse about it?
>
> A. Yes.

Q. Okay. And you don't recall if you did?

A. No.

Q. Do you know if you spoke to anyone in Healthcare the next day or a couple days later about the incident?

A. Not that I recall.

Q. Okay. So the only time you would have spoke to someone would have been when Nurse Walker interviewed you about the grievance?

A. Possibly, yes.

(Pl.'s Dep. at 37-39.)

As the Sixth Circuit recently observed, a two-part test is used in evaluating the Eighth Amendment rights of prisoners with serious medical needs. *See Bruederle v. Louisville Metro Gov't*, ___ F.3d ___, 2012 WL 3000601, at *4 (6th Cir. July 24, 2012). Thus, Plaintiff must first demonstrate "'the existence of a 'sufficiently serious' medical need.'" *Id.* (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). "If a failure to treat a particular condition would deny the inmate the minimal civilized measure of life's necessities, it meets this 'objective' prong." *Id.* (internal quotation marks and citation omitted). Under the second prong, Plaintiff "must show that the officials in question 'kn[ew] of and disregard[ed] an excessive risk to inmate health and safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "'Deliberate indifference is characterized by obduracy or wantonness -- it cannot be predicated on negligence, inadvertence, or good faith error.'" *Id.* (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012)).

Plaintiff's claim hinges on whether Dr. Khan's decision that Plaintiff could delay eating for 45 minutes to 1 hour while count was taken by jail officials represented deliberate

indifference to his serious medical needs. This Court concludes that, viewing the evidence in the light most favorable to Plaintiff, it did not.

Rather, the evidence, viewed in the light most favorable to Plaintiff, shows that Dr. Khan recognized that Plaintiff's low blood sugar level presented at least some risk but, in his medical opinion, a delay of 45 minutes to 1 hour before eating was reasonable and did not create an excessive risk to Plaintiff's health. Based on the facts presented here, no reasonable juror could find that Dr. Khan knew that Plaintiff required further attention. Consequently, Plaintiff cannot establish the required subjective component of the Eighth Amendment "deliberate indifference" test. *See Farmer*, 511 U.S. at 837 (observing that "the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") (emphasis added). The essence of Plaintiff's argument is that Dr. Khan should have known that, although he did not, he could have suffered serious medical consequences as the result of the 45 minute to 1 hour delay in eating. As the Sixth Circuit observed in *Bruederle*, "that is the language of medical malpractice, not deliberate indifference." *Bruederle*, ___ F.3d at ___, 2012 WL 3000601 at *6 (citing *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001)).

Further, to the extent Plaintiff claims that Dr. Khan was deliberately indifferent to the physical consequences he suffered as a result of having to wait the 45 minutes to 1 hour to eat, that claim is also dismissed. It is well-established in the Sixth Circuit "that an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish a detrimental effect of the delay in medical treatment to succeed." *Id.* at *7 (internal quotation marks and citations omitted).

7

**II.   Conclusion**

For the above-stated reasons, the Magistrate Judge's May 15, 2012 Report and Recommendation [159] is REJECTED, and Defendant Khan's motion for summary judgment [145] is GRANTED.

<pre>
                        s/Nancy G. Edmunds
                        Nancy G. Edmunds
                        United States District Judge
</pre>

Dated:  August 23, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 23, 2012, by electronic and/or ordinary mail.

<pre>
                        s/Carol A. Hemeyer
                        Case Manager
</pre>